DAVID YEREMIAN & ASSOCIATES, INC.
David Yeremian (SBN 226337)
David@yeremianlaw.com
Roman Shkodnik (SBN 285152)
Roman@yeremianlaw.com
535 N. Brand Blvd., Suite 705
Glendale, California 91203
Telephone: (818) 230-8380
Facsimile: (818) 230-0308

UNITED EMPLOYEES LAW GROUP, PC
Walter Haines (SBN 71075)
whaines@uelg.com
5500 Bolsa Ave., Suite 201
Huntington Beach, CA 92649
Telephone: (310) 652-2242

Attorneys for Plaintiff Fred Tollini,
on behalf of himself and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FRED TOLLINI, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CGI FEDERAL INC., a Delaware Corporation; CGI TECHNOLOGIES AND SOLUTIONS INC., a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 18-cv-03275-MMC<br><br><u>CLASS ACTION</u><br><br>*[Assigned for all purposes to the Honorable Maxine M. Chesney]*<br><br>**NOTICE OF REVISED UNOPPOSED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION FOR AN ORDER 1) PRELIMINARY APPROVING OF CLASS ACTION SETTLEMENT, APPROVING OF CLASS NOTICE, AND SETTING FINAL APPROVAL HEARING; AND (2) GRANTING PLAINTIFF LEAVE TO FILE A SECOND AMENDED CLASS ACTION COMPLAINT;**<br><br>*[filed concurrently with Supplemental Declaration of David Yeremian; and [Proposed] Order]*<br><br>Date:          May 15, 2020<br>Time:          9:00 a.m.<br>Courtroom.:  7<br><br>Complaint Filed: April 30, 2018<br>FAC Filed:      July 23, 2018 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on **May 15, 2020**, at **9:00 a.m.** or as soon thereafter as counsel may be heard, in Courtroom 7 of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Maxine M. Chesney, Plaintiff Fred Tollini ("Plaintiff"), on behalf of himself and all other similarly situated employees of Defendant CGI FEDERAL INC., a Delaware Corporation ("Defendant") (together, the "Parties"), will and hereby does move this Court for preliminary approval of the parties' Stipulation of Settlement ("Settlement" or "Settlement Agreement"), which proposes a fair and reasonable resolution of all of Plaintiff's class, collective, and representative claims against Defendant in this action.

Plaintiff respectfully request entry of an order (1) conditionally certifying the class comprised of Settlement Class Members for settlement purposes under the Federal Rules of Civil Procedure, Rule 23 (e.g., "Rule 23); (2) preliminarily approving the parties' Settlement; (3) appointing Plaintiff Fred Tollini as the Class Representative and Plaintiff's counsel as Class Counsel; (4) approving the form of the parties' proposed Class Notice; and (5) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiff for their requested attorneys' fees, costs, and service awards.

Plaintiff respectfully submits that good cause exists for granting the Motion for the reasons set forth in the concurrently filed documents. Defendant's counsel has reviewed the documents being filed in support of this Motion and does not oppose it, though Defendant has reserved the right to submit a Notice of Non-Opposition, together with any additional points and authorities for the Court's consideration.

The basis for this Motion is that the proposed Settlement is fair, adequate, and reasonable and in the best interests of the Class and Collective members as a whole, and the procedures proposed by the parties are adequate to ensure the opportunity of Class and Collective members to participate in, opt out of, or object to the Settlement.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities and other documents filed herewith, including the Settlement Agreement, the Declaration of David Yeremian and any exhibits, the [Proposed] Order granting preliminary

1    approval as addressed above, and the other pleadings and records on file in this action, and the

2    presentations of counsel and such oral or documentary evidence as may be presented at the

3    hearing on this unopposed Motion.

DATED: April 8, 2020           DAVID YEREMIAN & ASSOCIATES, INC.

By:   /s/ Roman Shkodnik
        David Yeremian
        Roman Shkodnik
        Attorneys for Plaintiff Fred Tollini and the
        putative Classes

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................. 1

II.    PROCEDURAL HISTORY OF THE CASE ................................................... 3

   A.    The Proceedings, Pleadings, and Parties............................................. 3

   B.    Summary of Discovery Conducted Prior to Mediation ....................... 4

   C.    Mediation and Defendant's Estimated Liability Exposure ................. 6

      1.   Liability Exposure for California Unpaid Wages Claims .......... 7

      2.   Liability Exposure for California Meal Period Violations ......... 7

      3.   Liability Exposure for Rest Period Claims ............................... 8

      4.   Liability Exposure for California Aggrieved Employees (PAGA Penalties)......................... 8

      5.   Waiting Time Penalties and Inaccurate Wage Statement Claims ..................................... 8

      6.   Total Potential Liability and Percentage of Recovery ............. 9

III.   SETTLEMENT TERMS ................................................................................. 10

   A.    Value of the Settlement to the Class ................................................. 10

   B.    Size of the Classes and the Class Definitions.................................... 10

   C.    Nature of the Payments and Notice, Exclusion, Objection Periods.................. 10

   D.    The Released Claims and Released Parties ........................................ 11

   E.    Attorney's Fees, Costs, Enhancement, Administration, PAGA .......... 12

   F.    The Net Distribution Funds; Calculations and Payments to Classes.................. 13

   G.    Notice Procedures ............................................................................ 14

   H.    Tax Consequences and Allocations and Uncashed Checks, Cy Pres ................. 15

IV.    ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL............................ 15

   A.    Standard of Review for Class Action Settlements.............................. 15

      1.   Strength of Plaintiff's Case, Mediation Supports Approval............. 16

      2.   The Risk, Expense, Complexity, Likely Duration of Litigation ......... 17

      3.   The Amount Offered In Settlement Is Fair and Reasonable .**Error! Bookmark not defined.**

      4.   The Experience and Views of Counsel ............................................ 18

V.     THE CLASSES SHOULD BE CONDITIONALLY CERTIFIED ......................... 19

i

A.   The Settlement Classes Satisfy the Requirements of Rule 23..............................................19

1.   The Numerosity Requirement is Satisfied ............................................................19

2.   Common Questions of Law and Fact Exist............................................................19

3.   Claims of the Plaintiff Are Typical.......................................................................20

4.   The Class Representatives Are Adequate ..............................................................20

B.   The Prerequisites of Rule 23(b) Are Also Satisfied............................................................20

1.   The Predominance Requirement ...........................................................................20

2.   The Superiority Requirement ................................................................................21

VI.   REQUESTED APPROVAL AND FEES, COSTS, ENHANCEMENT................................21

A.   The Requested Fees and Costs are Appropriate, and Class Counsel          Will Submit

Detailed Support for them Prior to Final Approval ........................................................21

B.   The Class Representative Enhancement Is Reasonable ........................................................22

C.   The Administrator and Administration Costs Should Be Approved .....................................22

VII.   THE PROPOSED METHOD OF NOTICE IS APPROPRIATE ..........................................23

VIII.   CONCLUSION......................................................................................................................24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

*Amaral v. Cintas*, 163 Cal. App. 4th 1157(2008) ............................................................... 8

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ............................................... 18

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ...................... 23

*Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268 (9th Cir. 1992) ..................................... 18

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ........................................ 16, 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................. 16

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ........................................................ 11

*In re High–Tech Emp. Antitrust Litig.*, No. 1–CV–02509–LHK, 2014 WL 3917126, (N.D. Cal. Aug. 8, 2014) ...................................................................................................................... 16

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) ................................................. 18

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ...................................... 18

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............. 18

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ...................................... 21

*Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943 (9th Cir. 1976) ....................................... 18

*Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150 (9th Cir. 2016) ........................... 21

**Statutes**

29 U.S.C. §§206 and 207 .................................................................................................... 1

California <u>Business & Professions Code</u> § 17200 *et seq.* ................................................ 3

California <u>Civil Code</u> § 1542 .......................................................................................... 12

California <u>Labor Code</u> § 203 .................................................................................... 3, 6, 8, 9

California <u>Labor Code</u> § 226(a) ....................................................................................... 3

California <u>Labor Code</u> § 226.7 ......................................................................................... 3

California <u>Labor Code</u> § 510 ........................................................................................... 3

California <u>Labor Code</u> § 2699 *et seq.* (PAGA) ................................................................ 4, 8

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................ 19, 20

Fed. R. Civ. P. 23(a)(2) ............................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ............................................................................................... 20

Fed. R. Civ. P. 23(c) .................................................................................................... 23

Fed. R. Civ. P. 23(e) ...................................................................................... 15, 16, 20

**Other Authorities**

*Newberg on Class Action*, 3d Ed. § 11.51 ................................................................ 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Fred Tollini ("Plaintiff"), on behalf of himself and the Settlement Class, respectfully seeks preliminary approval of the Settlement Agreement and Release of Claims ("Settlement" or "Settlement Agreement"), which proposes a fair and reasonable resolution of all of Plaintiff's claims against Defendant CGI FEDERAL INC., a Delaware Corporation ("Defendant") (together, the "Parties"). The Settlement Agreement is provided as **Exhibit 1** to the declaration of David Yeremian in support of this Motion. Plaintiff requests preliminary approval for **$350,000.00**. There will be no claim forms, and those class/collective members who do not request exclusion from the Settlement will automatically receive Individual Settlement Payments.

The settlement comprises of the following class members: the "Settlement Class" is defined as all current and former non-exempt individuals employed by Defendant within the State of California at any time during the period from April 30, 2014 through May 27, 2019 ("Class Period"). There is no difference between the Settlement Class and the Class proposed in Plaintiff's First Amended Complaint. (*See* ECF No. 40, Declaration of David Yeremian ¶23) The Settlement Class will not include any person who previously settled or released the Released Claims covered by this Settlement, or any other person who previously was paid or received awards through civil or administrative actions for the Released Claims covered by this Settlement. (*See* ECF No. 40, Declaration of David Yeremian ¶ 23; *see also* Exhibit 1, Settlement, ¶ 2).

For settlement purposes only, Plaintiff requests entry of an order (1) conditionally certifying the Settlement Class Members claims under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and 29 U.S.C. §201 *et seq*.; (2) preliminarily approving the Parties' Settlement; (3) appointing Plaintiff Fred Tollini as the representative for the Settlement Class, and Class Counsel[1] as counsel for the Settlement Class; (4) approving the Parties' proposed Class Notice; (5) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiff for their requested attorneys' fees, costs, and service awards and (6) accept for filing the Second Amended Class Action

---

[1] "Class Counsel" means the attorneys representing Plaintiff in this action: David Yeremian & Associates Inc.

Complaint attached as **Exhibit 3** to the Supplemental Declaration of David Yeremian and deem Defendant's Answer already on file to relate thereto, for settlement purposes only.

The Settlement is fair and reasonable, satisfies the Rule 23 requirements, and is worthy of approval. The individual settlement amount to the approximately **363** Class Members will pay them a total of at least **$229,000.00**, (i.e., The Gross Fund Value of $350,000.00 minus the proposed Class Representative service enhancement award ($5,000.00), the proposed Class Counsel Award (up to $87,500.00), anticipated litigated costs/expenses ($16,000.00), the anticipated Settlement Administration Costs ($7,500.00) and the PAGA Payment ($5,000.00)), with an average payment of approximately **$630.86** per employee. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 60.) Class Counsel and Plaintiff, without opposition from Defendant, respectfully submit that these results are in the range of reasonableness of a settlement that could ultimately be given final approval by this honorable Court.

Additionally, on January 3, 2020, this Court issued an Order regarding Plaintiff's motion for preliminary approval of class action settlement. Plaintiff's Class Counsel submits a Supplemental Declaration of David Yeremian ("Supplemental Decl. of Yeremian) with an Addendum to Settlement Agreement and Release of Claims ("Addendum"), as **Exhibit** 1 and a Revised Notice of Proposed Class Action Settlement ("Revised Notice") and Revised [Proposed] Order that addresses the Court's concern. [2]

---

[2]   The following changes were made: 1) The Addendum deletes the language "In the event it is determined that the actual number of Class Members exceeds 363 by more than ten percent (10%), at Defendant's option, either (a) the "Gross Fund Value," as defined in Paragraph 6, below, shall be increased by the same number of percentage points above ten percent (10%), by which the actual number of Class Members exceed 363 (for example, if the actual number of Class Members is determined to be twelve percent (12%) higher than 363, the Gross Fund Value shall be increased by two percent (2%)); or (b) Defendant may opt to cap the number of Class Members covered by this Settlement at 363 plus ten percent (10%)." (*See* Supplemental Decl. of Yeremian, ¶ 6, Exhibit 1, Addendum in § 2 (pgs. 1-2).); 2) Also, the Addendum now states that the class notice shall be emailed and mailed.(*See* Supplemental Decl. of Yeremian, ¶ 7, Exhibit 1, Addendum in § 15(b) (pg. 4).); 3) The Addendum also states that "No later than 90 days after the mailing of the settlement payment checks, the Settlement Administrator shall prepare and sign a declaration attaching as an exhibit all the settlement payment checks that have been cashed by the Settlement Class Members. Class Counsel shall file the declaration and exhibit with the Court as the current record of all consents by Settlement Class Members to opt into the action and release their FLSA claims." The Revised Notice now states "If you do not exclude yourself from the settlement, the endorsement and cashing of your settlement check will be deemed to be your consent in writing to become a party to this action for the purposes of effectuating the settlement and release of claims arising under the FLSA." (*See* Supplemental Decl. of Yeremian, ¶ 8, Exhibit 1, Addendum in § 13 (pg. 3), Exhibit A, Revised Notice in § 9 (pg.4).); 4) The Revised Notice now states that "Class Counsel will petition the Court for an award of attorneys' fees by motion to be filed with the Court within 14 days after the mailing of this Notice." (*See* Supplemental Decl. of Yeremian, ¶ 9, Exhibit A, Revised Notice in § 13 (pg.6).); 5) The Addendum and Revised Notice now state that the Class Period is from April 30, 2014 through May 27, 2019. (*See* Supplemental Decl. of Yeremian, ¶ 10); 6) The Addendum now defines Workweeks. (*See* Supplemental Decl. of Yeremian, ¶ 11); 7) The Addendum and Revised Notice no longer refers to Class Members as hourly employees. (*See* Supplemental Decl. of Yeremian, ¶ 12); 8) The Revised [Proposed]

Finally, as part of the Settlement Agreement, Plaintiff is to file (with leave of court) the Second Amended Class Action Complaint adding a cause of action rest-break liability Under Labor Code § 226.7 and reimbursement of necessary expenditures Under Labor Code § 2802. (*See* Supplemental Decl. of Yeremian, ¶5, **Exhibit 3**.)

## II.    PROCEDURAL HISTORY OF THE CASE

### A.    The Proceedings, Pleadings, and Parties

Defendant is a global information technology consulting, systems integration, outsourcing and solutions company headquartered in Montreal, Quebec, Canada. In the United States, Defendant is a contractor for the Federal government. Plaintiff worked as a document specialist from September 2014 through August 2017 at Defendant's location in San Francisco, California. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 11.)

Plaintiff filed this Class Action Complaint on April 30, 2018, in San Francisco County Superior Court alleging eight causes of action against Defendant for (1) Failure to Pay Minimum Wages; (2) Failure to Pay Wages Under FLSA, 29 USC §§ 206, 207; (3) Failure to Pay Wages and Overtime Under Labor Code § 510; (4) Meal-Period Liability Under Labor Code § 226.7; (5) Violation of Labor Code § 226(a); (6) Violation of Labor Code § 221; (7) Penalties Pursuant to Labor Code § 203; and (8) Violation of Business & Professions Code § 17200 *et seq*. The Complaint was filed alongside Plaintiff's PAGA notice letter, which was submitted to the LWDA on April 30, 2018 (the "Action.") (*See* ECF No. 40, Declaration of David Yeremian, ¶ 12.)

On May 30, 2018, Defendant filed their Answer to Plaintiff's Complaint. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 13).

---

Order has added Roman Shkodnik of David Yeremian & Associates, Inc. as counsel for the Settlement Class Members. (*See* Supplemental Decl. of Yeremian, ¶ 13); 9)The Revised Notice in now states will have 180 days to cash their check and  If they do not cash the check, the money will revert to the state, but they will still be deemed to have released your claims. (*See* Supplemental Decl. of Yeremian, ¶ 14, Exhibit A, Revised Notice in § 5 (pgs. 2-3)); 10) The Revised [Proposed] Order has updated the schedule for the Settlement Administration and final approval process as counsel for Plaintiff and Defendant discussed with the Court at the hearing on January 3, 2020. (*See* Supplemental Decl. of Yeremian, ¶ 15.); 11) Finally, the Addendum, Revised Notice, and Revised [Proposed] Order have been updated to correct a number of grammar issues. (*See* Supplemental Decl. of Yeremian, ¶ 16).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    On June 1, 2018, Defendant removed this lawsuit from San Francisco Superior Court to

2  United States District Northern District of California. (ECF No. 1.) (*See* ECF No. 40, Declaration of

3  David Yeremian, ¶ 14.)

4    On July 18, 2018, the Parties filed their Joint Stipulation for Entry of an Order Granting

5  Plaintiff Leave to File a First Amended Class Action Complaint, to add a single cause of action for

6  Penalties Pursuant to <u>Labor Code</u> § 2699, *et seq*. (ECF No. 15.) The Honorable Maxine M. Chesney

7  approved the Joint Stipulation on July 20, 2018. (ECF No. 16.) Plaintiff later filed his First Amended

8  Complaint on July 23, 2019, adding a cause of action for violation of <u>Labor Code</u> section 2699 *et*

9  *seq*. (ECF No. 17.) (*See* ECF No. 40, Declaration of David Yeremian, ¶ 15.)

10    On October 9, 2018, the Parties dismissed Defendant CGI Technologies and Solutions, Inc.,

11  from the Action. (ECF No. 29.) (*See* ECF No. 40, Declaration of David Yeremian, ¶ 16.)

12    On February 26, 2019, the Parties completed mediation with well-respected wage and hour

13  mediator, Jeffrey A. Ross. After a full day of negotiations based on the documents and information

14  exchanged, the Parties agreed in principle to the terms governing the settlement of this action and all

15  of Plaintiff's class, collective, and representative claims in it. The Parties then began working on

16  completing their long form Settlement Agreement, which they now present to the Court for approval.

17  (*See* ECF No. 40, Declaration of David Yeremian, ¶ 17.)

18    **B.    <u>Summary of Discovery Conducted Prior to Mediation</u>**

19    Plaintiff's complaints have been based upon substantial pre-filing research, both factual and

20  legal.  Defendant has produced documents, electronic discovery "ESI" and class data responsive to

21  Plaintiff's informal discovery requests. The parties' counsel conducted numerous further conferences

22  and exchanged correspondence on Plaintiff's claims, Defendant's defenses, and the scope of discovery.

23  (*See* ECF No. 40, Declaration of David Yeremian, ¶ 18.)

24    In preparing for mediation, the Parties conducted a conference to address production of

25  payroll records for the class, and to agree upon a suitable representative sampling. The class size is

26  approximately 363 non-exempt employees during the liability period of April 30, 2014 through the

27  date of preliminary approval of the Settlement or May 27, 2019 ("Class Period.") (*See* ECF No.

28  40, Declaration of David Yeremian, ¶ 19.) Defendant also produced the company policies and

confidential analytical spreadsheet containing all of the job descriptions, hourly rate, hire date, and termination date (if applicable) for the 363 class members during the liability period. (*Id*.) This payroll data reflected information including their gross wages paid, regular and overtime hours, net pay, and break and lunch schedule including the time at which they were offered. (*Id*.)

Defendant's document production has been comprehensive, including ESI such as payroll, and extensive document production, including spreadsheet data. These include the various versions and revisions to the company policy documents and handbooks, payroll data, and Time Entry Instructions. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 20.) Defendant also produced the complete personnel file for the Plaintiff. (*Id*.)

Prior to mediation, Class Counsel devoted substantial time and resources to:

- Consulting with Plaintiff;
- Developing settlement and negotiation strategies;
- Preparing damage analyses;
- Doing follow-up research on relevant legal and procedural questions;
- Meeting and conferring with opposing counsel regarding documents and other information to be produced in anticipation of mediation, such as the number of employees and work week numbers;
- Preparing for and defending the Deposition of Plaintiff; and
- Reviewing documents and data produced by Defendant.

(*See* ECF No. 40, Declaration of David Yeremian, ¶ 21.)

Prior to mediation, the parties also informally exchanged further class data and numbers necessary to complete a constructive mediation. This included and now includes the following information either provided by Defendant or drawn from production.

- Approximately 363 Settlement Class[3] Members employed during the relevant period.
- Average hourly rate of pay:  $16.78 per hour.

---

[3] "Settlement Class" includes all current and former non-exempt individuals employed by Defendant within the State of California at any time during the period from April 30, 2014 through t May 27, 2019 ("Class Period").The Class will not include any person who previously settled or released the Released Claims covered by this Settlement, or any other person who previously was paid or received awards through civil or administrative actions for the Released Claims covered by this Settlement.

- Total shifts worked by the Settlement Class Members during the Class Period[4]: 158,068.

- Total number of Class Members subject to California Section 203 waiting time penalties: 167 terminated employees from April 30, 2015 to February 26, 2019.

- Total pay periods in California Section 226 liability period: 8,241.

(*See* ECF No. 40, Declaration of David Yeremian, ¶ 23.)  Class Counsel provided the above data and information to Plaintiff's statistical analysis expert to assess the data and information and help Class Counsel prepare a credible and realistic damages model. (*Id*. at ¶ 24.) From this data, Class Counsel drew conclusions based on information received and records reviewed. (*Id*.)

**C.**    **Defendant's Estimated Liability Exposure**

After a full day of substantial negotiations, the parties were able to reach a settlement in principle and entered into a tentative agreement, which formed the basis for the Settlement that followed and is now before the Court for approval. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 25.) At all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length, while recognizing the uncertainty, risk, expense, and delay attendant to continuing the Action through trial and any appeals. *Id*.

The parties reached their Settlement only after evaluating Plaintiff's theories of potential exposure for the underlying claims, and, with the assistance of the mediator, considering discounts to potential liability in light of Defendant's contentions and defenses. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 26.) Using the comprehensive discovery and class data provided by Defendant, and with the assistance of our statistical analysis expert, we calculated Defendant's potential liability exposure for Plaintiff's main class-wide claims for unpaid wages and failure to provide meal and rest periods. (*Id*.)

Defendant, for its part, vigorously contested liability, the amount of claimed damages, and the propriety of class certification. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 27.) After Class Counsel analyzed the relevant documents and other gathered data, Class Counsel believed that this

---

[4] "Class Period" means from April 30, 2014 through May 27, 2019.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1   case was appropriate for resolution via mediation. (*Id*.) Given the high level of risk present for both

2   sides, the Parties elected to mediate Plaintiff's claims and explore the possibility of settlement. (*Id*.)

3           **1.**      **Liability Exposure for Off-the-Clock Work and Unpaid Wages**

4         Discovery established that Class Members were hourly, non-exempt employees, who, Plaintiff

5   contends, were not paid for alleged off-the-clock work. (*See* ECF No. 40, Declaration of David

6   Yeremian, ¶¶ 28-36.) Plaintiff conservatively estimated that the 363 Settlement Class members

7   endured approximately <u>15 minutes of off-the-clock work per work shift</u>. Using 158,068 shifts, and

8   an overtime rate of $25.17 ($16.78 hourly rate x 1.5), results in the following calculation for unpaid

9   wages for off the clock work:  158,068 Shifts x 15 minutes per shift x $25.17 = **$994,642.89** in

10  unpaid wages due to off the clock work. (*Id*.)

11        Defendant refuted these allegations and asserted its policies and practices were compliant,

12  that Class Members rarely worked overtime, and that individualized and unmanageable questions

13  would predominate over those amenable to class treatment. (*See* ECF No. 40, Declaration of David

14  Yeremian, ¶ 33.)Defendant further argued that the office was only open from  8 a.m. and based on

15  Plaintiff's and Class member's duties they could not have started working prior to the office opening up.

16  Moreover, as there is no written record of the alleged off-the-clock work, Defendant argued there

17  was no way to determine how much time was not separately compensated. Defendant further

18  argued that individualized issues predominated, requiring individual inquiries that precluded Rule

19  23 certification and rendered any proposed class or collective trial unmanageable. (*Id*.)

20          **2.**      **Liability Exposure for Meal Period Violations**

21        With the assistance of its statistical analysis expert, Class Counsel estimated that the

22  Settlement Class Members endured approximately one meal period violation per work week. (*See*

23  ECF No. 40, Declaration of David Yeremian, ¶ 35.) Plaintiff's expert then estimated the maximum

24  liability on this claim at: 63,227.20 meal break violations (for shifts greater than 5 hours there were

25  2 violations per week=40% x 158,068) x $16.78 per hour = **$1,060,952.41**. (*Id*.)

26        Defendant disagreed with Class Counsel's interpretation of the law and facts. (*Id*.) Defendant

27  contended that Class Members were given a reasonable opportunity to take their meal periods, and in

28  fact received their meal periods most of the time. In fact Defendant argued that Class Members were

given a 45-minute break.  Therefore, Class Counsel had to discount this number due to the fact that Defendant argued many individualized issues would apply making certification of this claim difficult to achieve.

### 3.    Liability Exposure for Rest Period Claims

Similar to the above meal period analysis, Plaintiff was able to use the data provided by Defendant to presume a conservative two rest period violation per work week to arrive at the following calculation:  63,227.20 meal break violations (2 violations per week=40% x 158,068) x $16.78 per hour = **$1,060,952.41**.

Defendant argued that it allowed its employees to take 15-minute rest breaks, which were in excess of the 10-minute rest breaks mandated under California law. (*Id.*) As a result of Defendants' arguments Class Counsel had to apply appropriate discounts in light of the facts and law as discussed above.

### 4.    Liability Exposure for California Aggrieved Employees (PAGA Penalties)

There were 8,241 pay periods for the 363 full time equivalent employees during the Section 2699 liability period. (*See* ECF No. 40, Declaration of David Yeremian, ¶¶ 36-37.) Under the PAGA, the following calculation resulted: $100 for each employee's pay period (8,241 x $100) ($787,800), for a total of **$824,100**.[5] (*Id.*)  In light of Defendant's advocated defenses to the underlying claims, the difficulties in proving off the clock work and damages for non-productive time, the total number of class members, and the uncertainty of certifying claims and the manageability issues presented, Plaintiff reduced this estimation accordingly. Also, given that PAGA penalties may be reduced at the Court's discretion, and that any penalties assessed would be a sort of double recovery. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 37.)

### 5.    Waiting Time Penalties and Inaccurate Wage Statement Claims:

Plaintiff also pursued derivative claims including for inaccurate wage statements under Labor Code § 226 and failure to pay all wages due at termination under Labor Code § 203. There are 167 employees who no longer work for Defendant. (*See* ECF No. 40, Declaration of David

---

[5]  Under *Amaral v. Cintas*, 163 Cal. App. 4th 1157, 1207-09 (2008)  the Court ruled that a lower penalty amount of $100 per violation applies in the absence of a determination that a violation actually occurred.

Yeremian, ¶ 38.) They either resigned or were terminated from Defendant's employment. (*Id.*) Based on Plaintiff's allegations, Defendant has had a consistent policy of failing to pay all wages due and owed to the Settlement Class at the time of their termination or within seventy-two (72) hours of their resignation, as required by California <u>Labor Code</u> §§201-203. (*Id.*) The Section 203 penalty was calculated by multiplying the number of terminated employees in the 3-year SOL by 30 days and by the average daily hours (8.0) and by the average rate of pay ($16.78) as follows: 167 employees x 30 shifts/employee x 8.2 hours per shift x $16.78/hr = **$689,355.96**. (*Id.*)

However, Defendant argued that Plaintiff's failure to prove the underlying claims could result in the dismissal of these derivative claims. *See, Pablo v. ServiceMaster Global Holdings, Inc.*, No. C 08-03894 SI, 2009 WL 2524478 (N.D. Cal. 2009) (denying class certification of derivative claims for wage statement and waiting-time penalties, as well as a UCL claim, on the grounds that underlying meal/rest period claims were not appropriate for class certification). (*See* ECF No. 40, Declaration of David Yeremian, ¶ 39.)  These claims also require additional showings and are subject to additional defenses. *See, e.g.,* <u>Labor Code</u> § 226(e) (recovery of penalties requires showing there was "a knowing and intentional failure by an employer"). Finally, Defendant argued that these penalties represent "an apparent unintentional double recovery" that is not permitted by the statutes. *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 4th 1308 (2018). Because the damages posed by these claims was more speculative and harder to prove, Plaintiff's valuation relied generally on the main claims.

### 6.    Total Potential Liability and Percentage of Recovery

The Gross Fund Value, if the Court approves all allocations proposed in the Settlement, totals **$350,000.00**. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 42.) The estimated liability exposure Class Counsel calculated for all claims is **$4,630,003.67**. (*Id.*) This number does not take into account any reduction of the full PAGA penalty of $824,100.00 which is likely at verdict. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 37.) Plaintiff submits this number is fair and reasonable in light of the risk of no recovery following protracted litigation, Defendant's policies, and for all the reasons addressed above and in the following sections. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 41.)

III.    **SETTLEMENT TERMS**

The Settlement (provided at *See* ECF No. 40, Declaration of David Yeremian, Exhibit 1) provides as follows:

A.      **Value of the Settlement to the Class**

Defendant has agreed to pay a Gross Fund Value of three hundred and fifty thousand dollars ($350,000.00) in connection with this Settlement. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 43; Exhibit 1, Settlement, ¶ 6.)

B.      **Size of the Class and the Class Definitions**

For purposes of the Settlement, the Parties are requesting that the Court conditionally certify the proposed Settlement Class. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 44.) Defendant also provided the following numbers for these classes at mediation: (1) Approximately 363 Settlement Class Members from April 30, 2014 through May 27, 2019.  (*See* ECF No. 40, Declaration of David Yeremian, ¶ 19.)

C.      **Nature of the Payments and Notice, Exclusion, Objection Periods**

This is a common fund settlement with no reversion and every Settlement Class Member will receive an individual settlement payment. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 44.)

Class Members shall have forty-five (45) calendar days from the date of mailing of the Settlement Documents to return a valid request for exclusion from the Settlement (the "Opt-Outs") to the Settlement Administrator. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 45.) If the forty-fifth day falls on a Sunday or holiday, the deadline to return Opt-Outs from the Settlement will be the next business day that is not a Sunday or holiday. (*Id.*) Class Members who do not return timely and valid Opt-Outs from the Settlement bearing a postmark or other proof of transmission within the Opt-Outs period shall be bound by the terms of the Settlement. (*Id.*) Those Settlement Class Members who do not submit Opt-Outs will receive their individual settlement amount from the Net Fund Value pursuant to this Settlement as calculated by the Settlement Administrator. (*Id.*)

Settlement Class members who wish to submit Opt-Outs and be excluded from the Settlement Class must submit a written Opt-Out bearing a post-mark within forty-five (45) calendar

10

1  days after the initial mailing of the Class Notice by the Settlement Administrator. (*See* ECF No. 40,

2  Declaration of David Yeremian, ¶¶ 46-47.)

3         Only those Settlement Class members who do not submit Opt-Outs may object to the Settlement

4  that also includes a request for attorneys' fees and costs. (*See* ECF No. 40, Declaration of David

5  Yeremian, ¶ 47.) All objections must be mailed to the Class Action Clerk, U.S. District Court for the

6  Northern District of California, 450 Golden Gate Avenue, Box 36060, San Francisco, California, 94102,

7  or by filing in person at any location of the U.S. District Court for the Northern District of California

8  with a postmark date no later than forty-five (45) calendar days after the mailing of the Class Notice,

9  and this deadline applies notwithstanding any argument regarding non-receipt or delayed receipt of the

10  Settlement Documents. (*Id.*) Any Settlement Class member or purported Settlement Class member who

11  fails to mail timely written objections in this manner shall be deemed to have waived any objections and

12  shall be foreclosed from making any objection to the Settlement and from filing any appeal from any

13  Final Order and Judgment issued by the Court. (*Id.*)

14        **D.**      **The Released Claims and Released Parties**

15         The Class Notice also provides a detailed recitation of the releases under the Agreement, and

16  makes clear the class and collective members are only releasing claims based on the factual predicate

17  stated in the first amended complaint. *See, Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010).

18  (*See* ECF No. 40, Declaration of David Yeremian, ¶¶ 48-51.) The Settlement Class Members'

19  claims are compromised, settled and dismissed as to the Class Member Released Claims under the

20  Settlement. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 50; Settlement, ¶ 18-19.)

21         The Settlement Class Released Claims include all claims, debts, liabilities, demands,

22  obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, actions, or causes of action

23  contingent or accrued for any and all claims that were asserted in the original and amended complaints

24  filed in the Lawsuit, or any claims which could have been asserted based on the allegations in the

25  original and amended complaints filed in the Lawsuit, including, without limitation, any claims under

26  federal and state law, claims for unpaid wages, claims for unpaid minimum wages, claims for unpaid

27  overtime, claims for missed meal or rest breaks, claims for meal or rest break penalties, claims for

28  unreimbursed employee business expenses, claims for liquidated damages, claims for unlawful

deductions from wages, claims for conversion of wages, claims for record-keeping violations, claims for wage-statement penalties, claims for "waiting time" penalties, claims of late/untimely payment of wages, and claims under the applicable California Wage Orders and the California Labor Code, as well as claims under Business and Professions Code section 17200 *et seq.*, and claims for penalties pursuant to Labor Code section 2698, *et seq.* (the PAGA) based on alleged violations of the applicable Wage Orders and Labor Code provisions, including claims for restitution and other equitable relief, liquidated damages, punitive damages, or penalties, claims under the Fair Labor Standards Act ("FLSA"), and any other benefit claimed on account of the allegations asserted or that could have been asserted in the complaints filed in the Lawsuit. (the "Released Claims") (*See* ECF No. 40, Declaration of David Yeremian, ¶ 50.)[6]

Thus, for the purpose of implementing a full and complete release and discharge of the Releasees, the Class Representative expressly acknowledges that this General Release is intended to include in its effect, without limitation, all claims which the Class Representative does not know or suspect to exist in Class Representative's favor at the time of execution hereof, and that this General Release contemplates the extinguishment of any such claim or claims. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 51.)

Plaintiff will also provide a General Release, including a release of unknown claims under California Civil Code § 1542. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 51; Settlement, ¶ 20.)

**E.      Attorney's Fees, Costs, Enhancement, Administration, PAGA**

The Gross Fund Value of $350,000.00 covers all settlement payments to Settlement Class Members, all attorneys' fees, all litigation costs, all Settlement Administration Expenses, all applicable taxes (but not Defendant's share of said taxes), all payments to the LWDA, interest, and the Service Enhancement to the Class Representative. (*See* ECF No. 40, Declaration of David

---

[6] Two claims will be released that were not originally pled in Plaintiff's First Amended Complaint: claims for rest break violations and claims for unreimbursed employee business expenses. Several factors convinced Class Counsel that releasing the rest break claim is appropriate. First, Defendant informally provided its policies and procedures regarding rest breaks, which appear valid. Second, at his deposition, Plaintiff testified that he received his rest breaks regularly. As to the failure to reimburse claim, the documents and information provided by Defendant prior to mediation did not show a failure to reimburse business expenses on a systemic level, and the Class Members had no occasion to incur business expenses, which Plaintiff's testimony confirmed. Therefore, Plaintiff could not provide any factual support for such a claim. (*See* ECF No. 40, Declaration of David Yeremian, ¶50, n.3.)

1    Yeremian, ¶ 52; Settlement, ¶ 6-11).

2            From the Gross Fund Value, Class Counsel may seek approval from the Court of a

3    maximum of $87,500.00 in attorneys' fees (25% of the Gross Fund Value), and a maximum of

4    $16,000.00 in actual litigation costs, for serving as Class Counsel. (*See* ECF No. 40, Declaration of

5    David Yeremian, ¶ 52.)

6            "PAGA Claims" shall mean the California <u>Labor Code</u> Private Attorneys General Act,

7    California <u>Labor Code</u> §§ 2698 *et seq*. (Settlement, ¶ 8.) From the Gross Fund Value, $5,000.00

8    shall be allocated to PAGA penalties, from which $3,750.00 (75%) shall be payable to the LWDA,

9    representing the LWDA's share of PAGA penalties. (*See* ECF No. 40, Declaration of David

10   Yeremian, ¶ 54.)

11           The "Settlement Administrator Costs" are those expenses incurred by the Settlement

12   Administrator in order to effectuate the Settlement Agreement. (*See* ECF No. 40, Declaration of

13   David Yeremian, ¶ 56.) The anticipated expenses are estimated at $7,500.00. (*Id.*)

14           From the Gross Fund Value, the Class Representative may seek approval from the Court of

15   a service enhancement payment not to exceed $5,000.00. (*See* ECF No. 40, Declaration of David

16   Yeremian, ¶ 57.)

17

18           **F.       <u>The Net Fund Value, Calculations and Individual Settlement Payments to the</u>**

19                    **<u>Settlement Class Members</u>**

20           The Gross Fund Value minus the above allocations as approved by the Court is the Net Fund

21   Value, which is estimated to be **$229,000** (i.e., The Gross Fund Value of $350,000.00 minus the

22   proposed Class Representative service enhancement award ($5,000.00), the proposed Class Counsel

23   Award (up to $87,500.00), anticipated litigated costs/expenses ($16,000.00), the anticipated

24   Settlement Administration Costs ($7,500.00) and the PAGA Payment ($5,000.00)). (*See* ECF No.

25   40, Declaration of David Yeremian, ¶ 58, Settlement, ¶ 5-8.) This estimated number will increase

26   with the addition of any unawarded portions of the above requested allocations. (*Id.*)

27           The Net Fund Value will be allocated to the 363 Settlement Class Members based on the

28   number of Workweeks they worked during the Class Period. (*Id.* at 59.) Defendant shall provide the

                                                    13

1   Settlement Administrator with the total Workweeks worked by each Settlement Class Member

2   during the Class Period. (*Id.*) The Settlement Administrator will calculate individual settlement

3   amounts for the Settlement Class based on the number of Workweeks that the Settlement Class

4   Member was employed by Defendant as a non-exempt employee during the class Period as

5   reflected on Defendant's internal records. (*Id.*) Workweeks shall be calculated based on

6   Defendant's records, and shall not include periods during which a Settlement Class Member was

7   employed as an exempt employee. (*Id.*) For purposes of payment, a week of employment shall be

8   defined as any regular workweek in which an individual worked three or more calendar days. (*Id*).

9   The Settlement Class' distribution amounts will be calculated by multiplying the Net Fund Value

10  by a fraction, the numerator of which is the total of a Settlement Class Member's number of work

11  weeks that the Settlement Class Member was employed by Defendant. (*Id.*)

12      **G.      Notice Procedures**

13          The Settlement Administrator, which is ILYM Group, Inc., will provide Class Notice of the

14  Settlement to the class and collective members by first U.S. mail. (*See* ECF No. 40, Declaration of

15  David Yeremian, ¶ 61; Settlement, ¶¶ 13, 15). The Class Notice, at **Exhibit A** to the Settlement, has

16  been drafted to efficiently yet comprehensively describe the terms of the Settlement. (*Id.*) Defendant

17  will provide the name, last known address, social security number, and the total Workweeks worked by

18  each Settlement Class Member in a Covered Position during the Class Period ("Class Data") to the

19  Settlement Administrator. (*See* ECF No. 40, Declaration of David Yeremian, ¶¶ 62.) Defendant will

20  provide the Class Data to the Settlement Administrator no later than ten (10) calendar days after the

21  Court grants Preliminary Approval of the Settlement. (*Id.*) The Settlement Administrator shall run

22  the Class Data through the National Change of Address database, and will use the most recent

23  address for each Class Member – either from Defendant's records or the National Change of

24  Address database – when mailing the Class Notice. (*Id.*)

25          It will be conclusively presumed that if an envelope so mailed has not been returned within

26  forty-five (45) days of the mailing that the Settlement Class Member received the Settlement

27  Documents. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 63.) With respect to any returned

28  envelopes, the Settlement Administrator shall perform one skip trace to locate a current address

14

1   and, if a current address is located, shall update the Settlement Class Member's address and

2   promptly re-mail the Class Notice. (*Id.*)

3       **H.**    **Tax Consequences and Allocations and Uncashed Checks, *Cy Pres***

4       The Settlement Administrator will calculate the individual settlement amount based on the

5   Settlement Class Member information provided to the Settlement Administrator by ILYM Group,

6   Inc. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 70.) All settlement payments to the

7   individual Settlement Class Members shall be allocated as follows: twenty-five percent (25%) to

8   wages, as to which IRS Forms W-2 will issue and from which employment taxes and withholdings

9   shall have been deducted; seventy-five percent (75%) to interest, penalties, and liquidated damages

10   as to which IRS Forms 1099 will issue to the Settlement Class Members. (*Id.*)

11       Any of the individual settlement payments that are not cashed after the Check Expiration Date

12   [i.e. on the 180th calendar day after mailing], shall become void, and the funds associated with such

13   voided checks, plus any accrued interest that has not otherwise been distributed (together, "Unused

14   Funds"), shall be distributed to the Controller of the State of California to be held pursuant to the

15   Unclaimed Property Law, California Civil Code section 1500 *et seq.*, for the benefit of those Settlement

16   Class members who did not cash their checks until such time that they claim their property. (*See* ECF

17   No. 40, Declaration of David Yeremian, ¶ 71.) The Settling Parties agree that this disposition results in

18   no "unpaid cash residue," or "unclaimed or abandoned funds" under California Civil Procedure Code

19   section 384, as amended effective June 27, 2018, as the entire Net Fund Value will be paid out to the

20   Settlement Class Members, whether or not all cash their payment checks. (*Id.*) Therefore, Defendants

21   will not be required to pay any interest on said amount. (*Id.*) The Parties agree that this is "an equitable

22   *cy pres* remedy" within the meaning of California Civil Procedure Code section 384(c), and therefore

23   the Parties are not subject to California Civil Procedure Code section 384, including subdivision (b), for

24   purposes of this Settlement Agreement. (*Id.*)

25   **IV.**    **ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL**

26       **A.**    **Standard of Review for Class Action Settlements**

27       Actions brought as class actions may only be settled with court approval. *See* Fed. R. Civ. Proc.

28   23(e). There is a presumption that settlement negotiations were conducted in good faith, but

1   nevertheless, "district courts should review class action settlements just as carefully at the initial stage as

2   they do at the final stage. At the initial stage, the inquiry should be whether the settlement is "fair,

3   reasonable, and adequate," based on any information the district court receives from the parties or can

4   obtain through its own research." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016).

5   Rule 23(e)(2) of the Federal Rules of Civil Procedure states that the district court may only approve the

6   settlement if, taken as a whole, "it is fair, reasonable, and adequate." *See also, Hanlon v. Chrysler

7   Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). In determining whether to finally approve a settlement, the

8   district court must balance "the strength of the plaintiffs' case; the risk, expense, complexity, and likely

9   duration of further litigation; the risk of maintaining class action status throughout the trial; the amount

10  offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience

11  and views of counsel; the presence of a governmental participant; and the reaction of the class members

12  to the proposed settlement." (*Id.*)

13      While it is less clear what standard should drive the preliminary approval process, "[s]ome

14  district courts ... have stated that the relevant inquiry is whether the settlement 'falls within the range of

15  possible approval' or 'within the range of reasonableness.'" *Cotter*, 176 F. Supp. 3d at 935 (citing *In re

16  High–Tech Emp. Antitrust Litig.,* No. 1–CV–02509–LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8,

17  2014); *see also, id.* ("perhaps the most important factor to consider is 'plaintiffs' expected recovery

18  balanced against the value of the settlement offer.") Where both sides face significant uncertainty, the

19  attendant risks favor settlement. *Hanlon*, at 1026. The Court's scrutiny of the proposed settlement is as

20  rigorous at preliminary approval as at the final approval stage. *See, e.g., Cotter v. Lyft, Inc.*, 193 F. Supp.

21  3d 1030, 1036-37 (N.D. Cal. 2016).

### 1.      Strength of Plaintiff's Case, Mediation Supports Approval

23      Courts presume a settlement is fair. (*See* ECF No. 40, Declaration of David Yeremian, ¶¶ 72.)

24  The settlement here was reached through arm's-length bargaining between counsel, with a respected

25  mediator, which included offers and counteroffers and eventual agreement. (*Id.*) Class Counsel was

26  confident in the merits of claims asserted, and likewise Defendant maintained that it would be able to

27  defeat a class certification motion and/or class claims on the merits, including an anticipated motion for

28  summary judgment. (*Id.*) The Parties preferred this Settlement to facing protracted litigation and

1  incurring costs and fees before this Honorable Court or the Ninth Circuit. (*Id*. at 74.)

2         Prior to and during the mediation, Defendant voluntarily provided class data and

3  information which permitted an objective assessment of Defendant's potential liability exposure,

4  including numbers for the current and former Settlement Class Members and their total work weeks

5  worked during the Class Period, along with other information required to assess the potential

6  settlement value. (*Id*. at 76.) At the mediation, both parties carefully weighed the risks and benefits

7  of resolving the case in comparison to proceeding with the motion for class certification and then

8  potentially before the Ninth Circuit. (*Id*.) At the end of the mediation, the parties concluded that the

9  Settlement terms were acceptable and the benefits of settling outweighed the risks of further

10 litigation. (*Id*.)

11           **2.    The Risk, Expense, Complexity, and Likely Duration of Litigation**

12         The Parties have disputed the strength of Plaintiff's claims, but believe the risk, expense,

13 complexity, and delay of further litigation supports settlement under terms arrived at through

14 compromise, as Plaintiff also faced substantial risk of not attaining class certification under Rule 23.

15 (*See* ECF No. 40, Declaration of David Yeremian, ¶ 75.) Defendant produced all relevant policies,

16 and asserted they were facially compliant and that individualized issues predominate requiring

17 individual inquiries that preclude Rule 23 certification and render any trial unmanageable (*See* ECF

18 No. 40, Declaration of David Yeremian, ¶ 76.) The uncertainty on the legal issues at the core of the

19 Parties' claims and defenses further underscores the reasonableness of the proposed Settlement.

20 (*Id*.) Given the constantly shifting legal landscape of class action litigation, there is also a

21 significant chance that any class certification order or judgment in favor Plaintiff could be

22 overturned on appeal. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 77.) All of these were

23 very substantial risks any of which could have resulted in the class receiving nothing if the claims

24 were further litigated. (*Id*.) These issues posed a significant risk to the certification as well as the

25 ultimate establishment of liability in this case. (*Id*.) Class Counsel submits it has properly assessed the

26 risks of continued litigation, including at trial and on appeal, in concluding the Settlement is fair. (*Id*. at

27 77-83.)

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

### 3.    The Amount Offered In Settlement Is Fair and Reasonable

The Net Fund Value will be allocated to the 363 Settlement Class Members based on the number of Workweeks they worked during the Class Period. Defendant will provide the name, last known address, social security number, and the total Workweeks worked by each Settlement Class Member in a Covered Position during the Class Period to the Settlement Administrator. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 59.) With 363 Settlement Class Members, the average payment to them, from the Net Fund Value, is approximately $**630.86**.  (*See* ECF No. 40, Declaration of David Yeremian, ¶ 60.)

Settlement in class actions is preferable where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See e.g., Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976). Here, the Settlement is fair and reasonable based on the strength of Plaintiff's claims and the risks and costs of further litigation. The Settlement compares favorably to the uncertainties of litigation. *Nat'l Rural Telecomm. Coop. v. Hughes Commc'ns Galaxy, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Courts in the Ninth Circuit have observed that "simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). The settlement here is significantly more than a "fraction" and provides a recovery commensurate with the associated risk factors involved in the case.

### 4.    The Experience and Views of Counsel

Another factor considered in determining the fairness of a settlement is the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026. Courts do not second guess the parties, or substitute their judgment for that of the proponents of the settlement, and many courts give considerable weight to the opinion of experienced counsel supporting the settlement. *See, e.g., Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). Where there is no evidence of fraud or collusion, courts presume they were

1   conducted in good faith. *See Newberg on Class Action*, 3d Ed. § 11.51.

2          Class Counsel have practiced law for many years, have focused their practices on wage and

3   hour class actions, and have cumulatively been appointed class counsel or co-class counsel in scores of

4   class actions, obtaining substantial recoveries for hundreds of thousands of employees. (*See* ECF No.

5   40, Declaration of David Yeremian, ¶ 81.) Defendant is represented by Catherine M. Dacre, Justin T.

6   Curley, and Ryan McCoy of Seyfarth Shaw LLP. (*See* ECF No. 40, Declaration of David Yeremian, ¶

7   10). Class Counsel believe the Settlement is fair and appropriate given all factors involved. (*Id.* at ¶ 80.)

8   **V.     THE CLASSES SHOULD BE CONDITIONALLY CERTIFIED**

9          Plaintiff requests, and Defendant does not oppose, conditional certification of the Settlement

10  Class Members for the purposes of this Settlement only. (*See* ECF No. 40, Declaration of David

11  Yeremian, ¶ 83.)

12         **A.     The Settlement Classes Satisfy the Requirements of Rule 23**

13         Plaintiff, without opposition, requests conditional certification under Rule 23(a).

14                **1.     The Numerosity Requirement is Satisfied**

15         Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."

16  Fed. R. Civ. P. 23(a)(1). Here, there are presently 363 class/collective members, and numerosity is

17  satisfied. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 102(a).)

18                **2.     Common Questions of Law and Fact Exist**

19         Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P.

20  23(a)(2). "All questions of fact and law need not be common to satisfy the rule." *Hanlon, supra,* 150

21  F.3d at 1019.  Here, the evidence shows that all class and collective members were uniformly

22  subject to the same employment policies and practices of being subject to extensive off the clock

23  work on a daily basis, which lead to the late or missed meal periods, and non-payment of proper

24  overtime. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 102(c).) While liability remains

25  disputed, the parties have determined that resolving the class claims is preferable to protracted litigation.

26  (*Id.* at 102.)

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

### 3.      Claims of the Plaintiff are Typical

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  In the instant case, Plaintiff, like every other class/collective member, is or was employed by Defendant as a non-exempt employee and was not paid for all hours worked. (*See* ECF No. 40, Declaration of David Yeremian., ¶ 102(d).) The class/collective members' claims arise from the same course of conduct and the same facts and legal theories, satisfying the typicality requirement. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 102.)

### 4.      Plaintiff is Adequate

Plaintiff and his counsel provide adequate representation of the interests of the class and collective. Class Counsel has represented employees in numerous wage and hour lawsuits brought as class actions, and has ample resources, experience, and expertise to draw upon in representing the class in this action. (*See* ECF No. 40, Declaration of David Yeremian, ¶¶ 3-9.) Plaintiff will attest in connection with final approval that they he is aware of his duties as class representative and haw actively participated in the prosecution of this case to date. (*See* ECF No. 40, Declaration of David Yeremian, ¶¶ 85-87.) Plaintiff will also assert that there is no antagonism between their interests and those of the class/collective members. (*Id*. at ¶¶ 86-87, 102(e).)

### B.      The Prerequisites of Rule 23(b) Are Also Satisfied

### 1.      The Predominance Requirement

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members." As noted in *Cotter*, "settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court[-]designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016). Here,

20

1  adjudication of the common issues surrounding Defendant's alleged employment practices could

2  establish Defendant's liability on a class-wide basis.  Common legal issues could predominate because

3  all class/collective members were subject to the same policies and shared similar job duties and were

4  subject to the alleged failure to pay for all hours worked. Although an individual class/collective

5  member may have incurred more off-the-clock hours than another, individual damages calculations will

6  not defeat predominance. *See, e.g., Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1155 (9th

7  Cir. 2016). For settlement purposes only, Defendant does not dispute that its policies and practices

8  applied to all of the class/collective members.

9  **2.      The Superiority Requirement**

10          To certify a class, the Court must also determine "that a class action is superior to other

11  available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

12  "Where class wide litigation of common issues will reduce litigation costs and promote greater

13  efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace,*

14  *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Proceeding as a class action would be superior to the

15  alternative, which is individual suits by over 363 class/collective members against Defendant or

16  protracted class certification fights on appeal. Given the current case posture and the Settlement

17  Agreement, class-wide settlement in this instance will serve to reduce future litigation costs and

18  promote greater efficiency in resolving the claims at issue.

19  **VI.     REQUESTED APPROVAL AND FEES, COSTS, ENHANCEMENT**

20          Plaintiff respectfully request approval of the following Settlement allocations.

21          **A.  The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit**

22              **Detailed Support for them Prior to Final Approval**

23          The Settlement allocates, subject to the Court's approval, up to **$87,500.00** (or 25% of the Gross

24  Fund Value), to a Class Counsel Award of attorneys' fees and actual litigation costs up to **$16,000.00**.

25  (*See* ECF No. 40, Declaration of David Yeremian, ¶ 88.) Class Counsel has the background and

26  experience to zealously represent Plaintiff and the class/collective members. (*See* ECF No. 40,

27  Declaration of David Yeremian, ¶¶ 3, 91.)

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1    Prior to the hearing on the motion for final approval of the Settlement, Class Counsel will

2  request approval of their fees and costs, as addressed in the schedule in the [Proposed] Order, and will

3  provide detailed billing records and costs invoices to document hours worked and costs incurred in this

4  litigation. Class Counsel will provide further details and supporting citations to hours and lodestar

5  amounts incurred in connection with Plaintiff's motion for attorneys' fees and costs, which will be

6  filed before the objection deadline or concurrent with the motion for final approval depending on

7  the Court's preference. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 88-101.) To date, Class

8  Counsel has also incurred approximately **$11,676.00** in reasonable litigation costs. (*Id.* at ¶ 97.)

9    **B.  The Class Representative Enhancement Is Reasonable**

10    The Settlement calls for an enhancement award for the Plaintiff as Class Representative in the

11  amount of up to **$5,000.00**. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 85-86.) Plaintiff

12  assisted Class Counsel with investigation and evaluation of the class and collective claims,

13  including producing documents and attending multiple telephonic conferences and meetings with

14  Plaintiff's counsel. (*See* ECF No. 40, Declaration of David Yeremian, ¶ 87.) Plaintiff worked with

15  Class Counsel from the outset of their investigation providing statements and information regarding

16  Defendant's policies and practices. (*Id.*) He has satisfied his obligation as Class Representative, has

17  incurred many hours in service to this case and the class and collective members, and has been

18  invaluable in developing the claims and in reaching the Settlement that is before the Court for

19  approval. (*Id.*) Plaintiff and Class Counsel request that they be preliminarily approved as Class

20  Representative. (*Id.*)

21    **C.  The Administrator and Administration Costs Should Be Approved**

22    The Settlement Agreement allocates **$7,500.00** to Settlement Administration fees and costs to

23  ILYM Group, Inc. (*See* ECF No. 40, Declaration of David Yeremian, ¶¶ 103-104.) ILYM Group, Inc.

24  is well-respected and its bid is reasonable, given the number of individuals involved in the Settlement.

25  Plaintiff requests approval of ILYM Group, Inc. as the administrator and of the allocation of **$7,500.00**

26  to administration expenses. (*Id.*)

27    On April 8, 2019, Class Counsel received a quote from ILYM for their settlement

28  administration process. (*See* Exhibit 3 attached to ECF No. 40, Declaration of David Yeremian)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

ILYM estimated the total administration cost at the discounted rate of $7,500.00 which includes $650.00 for case startup, $1,290.00 for project management, $921.55 for notification/mailing, $4,933.40 for distribution, and $1,035.00 for case conclusion. On October 4, 2019, Class Counsel received another quote from JND Legal Administration Co. for $8,034.00. (*See* Exhibit 4 attached to ECF No. 40, Declaration of David Yeremian) On October 5, 2019, Class Counsel received a quote from Rust Consulting Inc. for $11,687.00. (*ee* Exhibit 5 attached to ECF No. 40, Declaration of David Yeremian) Given the fact that the quotes from Rust Consulting Inc. and JND Legal Administration Co. are far more expensive than the quote from ILYM, Class Counsel believes that the proposal from ILYM is the most cost effective.

Additionally, Class Counsel's firm has used or is currently using ILYM as their settlement administrator for the past two years in the following cases: *Cruz vs. Dahan Investments, Inc.*, (LASC BC657871); *Gutierrez Mercado vs. Diablo View Industries, Inc.*, (Orange County SC 30-2016-00852176-CU-OE-CXC); *Verdugo v. Denali Water Solutions, LLC*, (CACD 5:18-cv-00170-ODW(SHK); *Rodriguez vs. PD Products, LLC*, (LASC BC696710); *Titus vs. American Internet Mortgage, Inc.*, (SDSC 37-2018-00036347-CU-OE-CTL; *Galvez vs. Intercontinental Hotels Group Resources, Inc.*, (LASC BC562146); *Woods vs. Clear Channel Outdoor, Inc.*, (Alameda County SC RG17873634). Class Counsel has also used Rust Consulting Inc., JND Legal Administration Co., and several other providers on numerous class actions over the recent years.

## VII.   THE PROPOSED METHOD OF NOTICE IS APPROPRIATE

The Class Notice must be the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The parties have agreed on procedures to provide class and collective members with written notice of the Settlement similar to that approved and used in hundreds of class action settlements.  Plaintiff requests that the Court approve the Class Notice and procedures detailed in the Settlement Agreement. (*See* ECF No. 40, Declaration of David Yeremian, ¶¶ 62-69; Exhibit 1, Settlement, and Exhibit A thereto for the Notice). Additionally, Class Action Fairness Act of 2005 ("CAFA") notice is not required.

## VIII.   <u>CONCLUSION</u>

Plaintiff, without opposition from Defendant, respectfully ask that the Court enter the [proposed] Order granting preliminary approval to the Settlement, confirming Class Counsel and Plaintiff as Class Representative as requested, authorizing the mailing of the proposed Class Notice to the class/collective members, and scheduling a final fairness and approval hearing.


DATED: April 8, 2020                   DAVID YEREMIAN & ASSOCIATES, INC.


By:   */s/ Roman Shkodnik*
         David Yeremian
         Roman Shkodnik
         Attorneys for Plaintiff Fred Tollini, and the putative
         Class

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT